O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA BARBOSA, AN INDIVIDUAL,<br><br>         Plaintiff,<br><br>  v.<br><br>MEDICREDIT, INC., AND DOES 1-25,<br><br>         Defendants. | Case No. EDCV 14-00063-VAP (SPx)<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DOC. NO. 32) AND GRANTING MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES AND CLASS REPRESENTATIVE ENHANCEMENT (DOC. NO. 33)**<br><br>**[Motions filed on March 23, 2015]** |

On March 23, 2015, Plaintiff Diana Barbosa ("Barbosa") filed a "Motion for Final Approval of Class/Collective/Representative Action Settlement" ("Approval Mot.") (Doc. No. 32) and a "Motion for Award of Attorneys' Fees, Litigation Expenses and Class Representative Enhancement" ("Fee Mot.") (Doc. No. 33). Barbosa seeks final judicial approval of an agreement to settle employment claims against her former employer, Defendant MediCredit, Inc. ("MediCredit").  The matter came before the Court for a hearing on April 20, 2015.

After consideration of the papers filed in support of the motions, the Court GRANTS the motions, and enters final approval of the settlement between Barbosa and MediCredit, and approves Class Counsel's request for attorneys' fees and other associated litigation costs.

## I.   BACKGROUND

**A.   Facts**

Barbosa is a former employee of MediCredit, which is in the debt collecting business.  (Order Granting Preliminary Approval ("Approval Order")(Doc. No. 31) at 2.)  Barbosa alleges MediCredit discharged her on August 9, 2013 because she was pregnant.  (First Amended Complaint ("FAC")(Doc. No. 28) ¶ 13; Approval Order at 2.)[1]  The FAC asserts two individual claims related to the allegedly unlawful termination; one under California Government Code § 12940(a) ("FEHA"), and one for "Wrongful Termination in Violation of Public Policy." (FAC ¶¶ 13, 20.)

In addition to her individual claims, Barbosa sets forth a collection of class claims asserting California wage and hour law violations.  The FAC, on behalf of "all persons employed by Defendant in any non-exempt position

---

[1]    The Court allowed Barbosa to file an amended pleading in connection with her previous motion for preliminary approval of the class action settlement so the Court could better understand the factual allegations underlying her claims. (See Approval Order at 2 n.1.)

2

in the State of California between December 9, 2009 and present," alleges the following class claims: (1) failure to pay overtime wages; (2) failure to provide itemized statement to employee; (3) failure to pay terminated or quitting employee; (4) unfair business practices; (5) failure to provide meal and rest periods; (6) recovery of civil penalties under the California Private Attorneys General Act ("PAGA"); and (7) violation of the federal Fair Labor Standards Act (collectively, "Class Claims").[2] The parties seek final approval of a settlement agreement related to the FAC's class claims; Barbosa's individual claims against MediCredit have settled separately. (Approval Order at 2-3; Declaration of Michael A. Gould in Support of Motion for Preliminary Approval of Class Action Settlement (Doc. No. 27-2) Ex. 1 ("Settlement Agreement").)

Specifically, the Class Claims allege MediCredit pays its non-exempt workers commissions and performance bonuses, but those payments are not reflected in their base pay rates so the workers are automatically underpaid for any overtime worked. (Approval Order at 3; FAC ¶¶ 24-26.) Under the California Labor Code, a work week

---

[2]    Those claims are brought under: Cal. Lab. Code §§ 1194, 510(a), Cal. Code of Regulations § 11040; Cal. Lab. Code § 226; Cal. Lab. Code §§ 201, 202, 203; Cal. Bus. & Prof. Code § 17200 et seq.; Cal. Lab. Code §§ 218.5, 226.7, 512; Cal. Lab. Code § 2699 et seq.; and 29 U.S.C. 201 et seq.

1  consists of forty hours, and all additional hours are
2  considered overtime.  See Cal. Lab. Code § 510.  Overtime
3  hours are typically paid at 150 percent of a worker's
4  base pay rate,[3] see id., but Barbosa alleges that the
5  base pay rate did not include the bonuses and commissions
6  as a matter of MediCredit's policy, so the overtime rate
7  necessarily fell short of the required time-and-a-half
8  rate for all workers.  (Approval Order at 3.)
9
10 **B.  Procedural History**
11     Barbosa filed a state court Complaint on December 9,
12 2013, and MediCredit removed the case to federal court on
13 January 10, 2014.  (Not. of Removal.)  Following removal,
14 the parties met with a private mediator and settled both
15 Barbosa's individual wrongful termination claims and any
16 potential class or representative claims.[4]  (Approval
17 Order at 4.)
18
19
20
21  ─────────────
22     [3]    California law adopts federal law's definition
   of a worker's "base pay rate," as used by the Fair Labor
   Standards Act, 29 U.S.C. § 207(e).  Alonzo v. Maximus,
23 Inc., 832 F. Supp. 2d 1122, 1129 (C.D. Cal. 2011).  Under
   the FLSA, bonuses and commissions count toward a worker's
24 base pay rate when they are awarded as a matter of course
   pursuant to contract or agreement (as opposed to a bonus
25 awarded at a supervisor's discretion).  See id.; 29
   U.S.C. § 207(e)(3).
26
     [4]    All subsequent references to the Settlement
27 Agreement refer to the proposed settlement of the class
   claim only, not the settlement of Barbosa's individual
28 claims.

4

1    Before meeting with the mediator, the parties
2    conducted limited discovery, including Rule 26(a) initial
3    disclosures, requests for production, and
4    interrogatories.  (Id. at 4.)  Based on the information
5    provided by MediCredit, Barbosa "determined that she was
6    allegedly owed $40.28 for Defendant's miscalculation of
7    overtime pay."  (Id.)  MediCredit also told Barbosa, "for
8    mediation purposes," that class members' (past and
9    current MediCredit employees) average rate of pay was $15
10   per hour, but Barbosa earned $19.02 per hour because she
11   was a supervisor.  (Id.)  Finally, MediCredit gave
12   Barbosa a "random sampling of payroll records showing the
13   timekeeping data for Class Members," which allowed
14   Barbosa to "estimate Class Damages" of about $20,000.
15   (Id.)
16
17      Barbosa filed a motion seeking provisional
18   certification of the proposed class and preliminary
19   approval of the Settlement Agreement, as well as
20   provisional certification of the collective action under
21   the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et
22   seq., on October 29, 2014; the Court granted the motion
23   on December 9, 2014.  (See Doc. Nos. 29, 32.)  On March
24   23, 2015, Barbosa filed the instant motions, seeking
25   final approval of the settlement and the apportionment of
26   attorneys' fees, costs, and class representative
27   enhancements.
28

5

**C.   The Proposed Settlement Agreement**

   **1.   Gross and Net Settlement Amounts**

   The parties agreed to settle the case, pending approval of the Court, for a maximum sum of $200,000; this is the limit of MediCredit's liability under the Settlement Agreement and all claims, fees, and costs will be subtracted from the $200,000 amount ("Gross Settlement Amount").  (Settlement Agreement § IV ¶ B.)  Barbosa's lawyers proposed to take a maximum of $60,000 from the Gross Settlement Amount for their fees, and up to $2,500 for their costs.  (<u>Id.</u> § IV ¶ C.2.)  Additionally, the parties submit Barbosa should receive a $5,000 "incentive payment" for her time and energy spent as the named plaintiff.  (<u>Id.</u> § IV ¶ C.1.)  The Settlement Administrator, Class Action Claims Administration, Inc. ("Settlement Administrator"), will receive up to $5,500 for its efforts  (<u>Id.</u> ¶ C.3.)  Finally, $5,000 will be "allocated to penalties pursuant to PAGA" and paid to the California Labor and Workforce Development Agency ("LWDA").  (<u>Id.</u> § IV ¶ C.4.)  In sum, fixed costs to be paid out of the Gross Settlement Amount will total $78,500, leaving $121,500 for the Class Members ("Net Settlement Amount").

**2.   The Class Period and Release of Future Claims**

Pursuant to the Court's Preliminary Approval Order, the Court conditionally certified a class for settlement purposes, comprising: "[a]ll persons employed by Defendant in any non-exempt position in the State of California between December 9, 2009 and the date the Court enters an order granting preliminary approval of the Settlement." (Approval Order at 10.)  The parties estimate that there are approximately 480 past and current MediCredit employees who are members of this class.  (<u>Id.</u>)  In exchange for payment from the settlement fund, the Class Members will be precluded by a "narrowly tailored" release ("Release") from pursuing future wage and hour claims against MediCredit. (Approval Order at 7.)  The scope of the proposed Release is broad -- it states, in relevant part:

Class Members fully and finally release [MediCredit] . . . from any and all known and unknown claims arising from or related to the matters alleged in the Action . . . to include but not limited to, failure to pay minimum wage, straight time compensation, overtime compensation, and interest; payment for all hours worked; wage statements; failure to provide meal periods; failure to authorize and permit rest periods, failure to keep accurate records; unfair business practices; wage payments; penalties,

7

1        including, but not limited to, recordkeeping

2        penalties; pay-stub penalties, minimum-wage

3        penalties, and waiting-time penalties.

4

5  (Settlement Agreement § IV ¶ H.)[5]  Also, the Release

6  explains that any Class Members "who do not opt out

7  provide their written consent to participate in the FLSA

8  component" of the case, and release MediCredit from

9  future FLSA claims by "submitting a valid Claim Form" or

10 cashing a settlement check.  (<u>Id.</u>)  In other words, a

11 Class Member's failure to opt out of this action counts

12 as an opt-in to the proposed FLSA collective action.

13

14    **3.   Claims Administration**

15    In order to receive payment from the settlement fund,

16 the Settlement Agreement calls for "personal

17 notice . . . by mail" because the parties state that is

18 "the method best calculated to provide notice."

19 (Approval Order at 5.)  The Settlement Administrator will

20 be responsible for mailing notice ("Notice") and issuing

21 the checks to Class Members who submit claims.

22 _____

23      [5] The Release also specifies: "The Released Claims
   include all such claims arising under the California
24 Labor Code," (including, but not limited to §§ 201-204,
   210, 218.5, 218.6, 225.5, 226, 226(a), 226(b), 226(e),
25 226.2, 226.7, 510, 510(a), 511, 512, 558, 1174, 1174.5,
   1194, 1197, 1198, 2698 <u>et seq.</u>); the California Code of
26 Regulations §§ 110400 <u>et seq.</u>; the Wage orders of the
   California Industrial Welfare Commission; the California
27 PAGA; California UCL; California common law of contract,
   the FLSA, and federal common law.  (Settlement Agreement
28 § IV ¶ H.)

1  (Settlement Agreement § IV ¶ D.)  The Settlement
2  Administrator will mail the Notice to the last known
3  address of a Class Member, as provided by MediCredit, and
4  if the Notice is returned as undeliverable the
5  administrator will "search for a more current address"
6  and re-mail the Notice.  (Id. § IV ¶ D.)

7

8  Class Members who submit "valid and timely" Claim
9  Forms ("timely" means 45 days after the Settlement
10  Administrator mails the Notice) will receive their pro-
11  rated share of the Net Settlement Amount, based on the
12  proposed distribution formula.  (Settlement Agreement
13  § IV ¶ C.6.a.)  That formula bases a Class Member's
14  payout on "(1) the individual class member's total shifts
15  worked during the class period; (2) divided by the total
16  number of shifts of all class members during the class
17  period; (3) multiplied by the net settlement amount."
18  (Id.)  Any unclaimed portion of the settlement will be
19  distributed pro rata to class members who submit claims
20  (up to twice the claimant's original share), with the
21  remainder distributed as cy pres relief to the Family-
22  Sustaining Employment Foundation of the United Way, which
23  according to Class Counsel, is a program that "provides
24  education and training to workers and connects workers
25  with sustainable employment opportunities."[6]

26  _____

27  [6]  The Court previously approved of a cy pres
award, but noted that it could not finally approve the
28                                      (continued...)

1  (Declaration of Michael A. Gould ("Gould Decl.") (Doc.

2  No. 32-5) ¶ 28; <u>see also</u> Approval Mot. at 6.)

3

4      **4.   The Notice and Claim Form**

5      The parties' proposed Notice (Doc. No. 27-3),

6  provides Class Members with a "brief description of the

7  lawsuit," informs Class Members of "the proposed

8  settlement terms," and advises Class Members of their

9  "legal rights."[7]  (<u>Id.</u> at 2.)

10

11     The Notice explains the substantive allegations of

12  the FAC to Class Members.  The Notice accurately

13  describes the Gross Settlement Amount, and the deductions

14  that will be made from it, then goes on to state

15  unambiguously that the recipient of the Notice is

16  entitled to recover money from the settlement, and how

17  the amount of a claim will be calculated.  (<u>Id.</u> at 3-4.)

18  _____

19      [6](...continued)
award until it was known how much of the Net Settlement

20  Amount remained.  (Approval Order at 6 n.7.)  Moreover,
the Court also noted that a <u>cy pres</u> award should be

21  "guided by (1) the objectives of the underlying
statute(s) and (2) the interests of the silent class

22  members."  <u>See</u> <u>Dennis v. Kellogg Co.</u>, 697 F.3d 858, 865
(9th Cir. 2012).  For this reason, the parties appear to

23  have agreed to change the <u>cy pres</u> award party from the
Los Angeles Chapter of the Special Olympics to the United

24  Way.

25      [7]   Class Counsel previously only submitted a
proposed Notice and Claim form in English (<u>see</u> Approval

26  Order at 6 n.8), but have submitted examples of a
proposed Notice and Claim forms in both English and

27  Spanish along with the motions.  (<u>See</u> Declaration of
Caroline Lowman ("Lowman Decl.") (Doc. No. 32-3) Exs. A-

28  D.)

1      The Notice further explains that to submit a claim, a
2  Class Member must sign and return the Claim Form
3  (enclosed with the Notice) to the Settlement
4  Administrator by a date certain.  (<u>Id.</u> at 4.)  Class
5  Members are also apprised of their right to do nothing;
6  opt out of the settlement; or object to the settlement.
7  (<u>Id.</u> at 5.)  The consequences of those decisions are
8  clearly stated.  (<u>Id.</u>)

9

10      The Claim Form is simple, and only requires the Class
11  Member to fill in some personal information and mail the
12  signed form back via U.S. Mail by the date indicated.
13  (<u>Id.</u> at 9-11.)

14

15                    **II.   LEGAL STANDARD**
16      Under Rule 23(e) of the Federal Rules of Civil
17  Procedure, "claims, issues, or defenses of a certified
18  class may be settled, voluntarily dismissed, or
19  compromised only with the court's approval."  Fed. R.
20  Civ. P. 23(e).  A court must engage in a two-step process
21  to approve a proposed class action settlement. First, the
22  court must determine whether the proposed settlement
23  deserves preliminary approval.  <u>Nat'l Rural Telecomms.</u>
24  <u>Coop. v. DirecTV, Inc.</u>, 221 F.R.D. 523, 525 (C.D. Cal.
25  2004). Second, after notice is given to class members,
26  the Court must determine whether final approval is
27  warranted.  <u>Id.</u>  A court should approve a settlement
28

                              11

pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable." Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); accord In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).

Circuit law teaches that the court must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable:

(1) the strength of the plaintiff's case;
(2) the risk, expense, complexity, and likely duration of further litigation;
(3) the risk of maintaining class action status throughout the trial;
(4) the amount offered in settlement;
(5) the extent of discovery completed and the stage of the proceedings;
(6) the experience and views of counsel;
(7) the presence of a governmental participant; and
(8) the reaction of the class members to the proposed settlement.

1  <u>Torrisi</u>, 8 F.3d at 1375; <u>accord</u> <u>Linney v. Cellular Alaska</u>
2  <u>Partnership</u>, 151 F.3d 1234, 1242 (9th Cir. 1998); <u>Hanlon</u>,
3  150 F.3d at 1026. "In addition, the settlement may not be
4  the product of collusion among the negotiating parties."
5  <u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d at 458.
6  These factors are not exclusive, and one factor may
7  deserve more weight than the others depending on the
8  circumstances. <u>Torrisi</u>, 8 F.3d at 1376. In some
9  instances, "one factor alone may prove determinative in
10 finding sufficient grounds for court approval." <u>Nat'l</u>
11 <u>Rural Telecomms. Coop.</u>, 221 F.R.D. at 525-26 (citing
12 <u>Torrisi</u>, 8 F.3d at 1376). In addition, "[t]he involvement
13 of experienced class action counsel and the fact that the
14 settlement agreement was reached in arm's length
15 negotiations, after relevant discovery had taken place
16 create a presumption that the agreement is fair." <u>Linney</u>
17 <u>v. Cellular Alaska Partnership</u>, 1997 WL 450064, *5 (N.D.
18 Cal. July 18, 1997), <u>aff'd</u>, 151 F.3d at 1234.
19
20              **III.   DISCUSSION**
21 **A.   Final Approval of the Settlement**
22        **1.   Approval of the Settlement Terms**
23        As discussed below, after balancing the <u>Torrisi</u>
24 factors, the Court finds that final approval of the
25 Settlement Agreement should be granted.
26
27
28

### a.   The Strength of the Plaintiffs' Case

As noted in the Court's Preliminary Approval Order, the gravamen of Barbosa's Class Claims related to overtime-rate violations pursuant to California Labor Code § 510(a), arise from MediCredit's alleged systemic failure to include employees' bonuses in employees' base pay rates.  (Approval Order at 4.)  The Court previously found that Plaintiffs' case under § 510(a) appeared strong because the class claims could easily be proven by reference to MediCredit's personnel and payroll records. (Id.)  Moreover, according to Class Counsel, because this case involved a relatively low amount in damages, settlement outweighs the risk of further litigation. (Approval Mot. at 6.)  Accordingly, this factor weighs in favor of approval.

### b.   The Risk, Expense, and Complexity of Further Litigation

This litigation is not complex.  The theory of liability alleges a mechanical policy on the part of MediCredit that could be easily proved or disproved through minimal discovery of MediCredit's payroll records.  Further, it is likely this case would not even reach trial; whether MediCredit systemically underpaid its workers could be resolved at summary judgment. Still, as Class Counsel points out, "[i]f this case had not settled, a motion for class certification, a possible

appeal, post-certification merits discovery, and trial
preparation would have exacted a significant toll on the
Parties and the Court."  (Approval Mot. at 7-8.)
Accordingly, this factor weighs slightly in favor of
approval.

### c.    The Risk of Maintaining Class Action Status Through Trial

The Court previously found the Class Members' risk of
losing class action status in the future was low, because
MediCredit's employees were all subject to the same
alleged policy that resulted in underpayment of overtime
wages.  (Approval Order at 17.)  Moreover, although
MediCredit only conditionally stipulated to the facts
necessary for class certification (<u>see</u> Settlement
Agreement § III ¶ B), the risk of decertification before
trial seems slight appeared slight based on Barbosa's
allegations.  As the parties have not identified any
particular facts or circumstances in this case which
would tend to show that decertification was probable,
this factor is at best neutral.

### d.    The Settlement Amount

The amount of the Net Settlement Agreement, about
$120,000, greatly exceeds the damages to the class as
estimated by Class Counsel.  (Approval Order at 4.)  The
Settlement Agreement offers class members compensation

15

well in excess of what they would individually be entitled to if they brought their own claims -- the Net Settlement Amount totals over $125,000 but Class Counsel estimate that class-wide damages for the § 510(a) violation would only amount to about $20,000. (<u>Id.</u> at 16-18; Approval Mot. at 8-9.) For that reason, this factor favors settlement because it will further both the workers' interest in receiving the correct amount of pay for their overtime and the State of California's interest in enforcing its Labor Code. (Approval Order at 18.)

### e. The Extent of Discovery Taken in the Case

In the Preliminary Approval Order, the Court noted that only limited discovery had been undertaken in this case, and while the parties had completed initial disclosures, requests for production, and interrogatories, the record did not clarify exactly what has been requested or produced. (Approval Order at 18.) The Court further observed that it was not clear what the focus of the discovery was, beyond the § 510(a) violation and whether meal and rest breaks complied with the relevant statutes. (<u>Id.</u>) As the scope of discovery appeared to be narrow and the investigation of potential class claims seemed less than exhaustive, especially when compared to the breadth of the Release of claims in the Settlement Agreement, the Court found that this factor cut against settlement. (<u>Id.</u>) The Approval Mot. does

1  not address these concerns.  Accordingly, the Court still
2  finds that this factor cuts against settlement.

3

4              **f.   The Experience and Views of Counsel**
5       The Court accepts Class Counsel's representation that
6  all attorneys representing the class "primarily prosecute
7  wage and hour class actions," and that each attorney
8  "working on this matter [has] been appointed class
9  counsel through certification and settlement of numerous
10 wage and hour class actions."  (Approval Mot. at 10.)
11 Based on this extensive experience, Class Counsel believe
12 that the settlement "is fair, adequate, and reasonable in
13 protecting and vindicating the rights of Class Members."
14 (Id.)  Consequently, this factor favors approval of the
15 settlement.

16

17             **g.   Presence of a Government Participant**
18      The Court previous noted that because one of the
19 Class Claims was made pursuant to PAGA, the members of
20 the Class were "aggrieved employees bringing . . . suit[]
21 . . . as the State's agents . . . ."  (See Approval Order
22 at 19 (citing Iskanian v. CLS Transp. Los Angeles, LLC,
23 59 Cal. 4th 348, 378-89 (2014)).  Where class members
24 stand as a proxy for the state, this factor does not
25 weigh against approval.  See Vasquez v. Coast Valley
26 Roofing, Inc., 266 F.R.D. 482, 490 (E.D. Cal. 2010).

27

28

### h.   Reaction of the Class Members to the Settlement

Class Counsel states that approximately 197 valid claims -- 41.1% of the total expected class -- were submitted by the optout deadline of February 23, 2015. (Approval Mot. at 10.)  Of the total amount allocated to pay class claims, approximately 52% of those funds have been expended to pay claims.  (<u>Id.</u>)  Five class members have submitted forms to opt-out of the settlement; no objections have been filed.  (Approval Mot. at 10.) Where "the overwhelming majority of the class willingly approved the offer and stayed in the class," there is "at least some objective positive commentary as to its fairness."  <u>Hanlon</u>, 150 F.3d at 1027.  The Court finds that the overall positive reaction to the settlement weighs in favor of approval.

### i.   Whether the Settlement Appears Non-collusive

As the Court noted in the Preliminary Approval Order, this settlement was reached with the help of a neutral mediator, after an arm's-length mediation session. (Approval Order at 16.)  Settlements reached with the help of a mediator are likely non-collusive.  <u>Satchell v. Fed. Express Corp.</u>, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").  The parties have

1   presented no reason for the Court to reconsider its

2   previous finding that this settlement was the product of

3   arm's-length negotiations, and accordingly, the Court

4   finds this factor weighs in favor of approval.

5

6       When the <u>Torrisi</u> factors are balanced here, the

7   majority of the relevant factors favor settlement, or are

8   neutral at worst.  Consequently, the Court finds the

9   Settlement Agreement to be fair, reasonable, and

10  adequate.

11

12      **2.   Approval of the Notice Procedures**

13      Rule 23 requires the court to direct to Class Members

14  "the best notice that is practicable under the

15  circumstances, including individual notice to all members

16  who can be identified through reasonable effort."  Fed.

17  R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1)

18  requires the court to "direct notice in a reasonable

19  manner to all class members who would be bound by the

20  proposal."  The notice must explain in easily understood

21  language the nature of the action, definition of the

22  class, class claims, issues and defenses, ability to

23  appear through individual counsel, procedure to request

24  exclusion, and binding nature of a class judgment.  Fed.

25  R. Civ. P. 23(c)(2)(B).  Plaintiff must provide notice to

26  potential opt-in class members that is "timely, accurate,

27  and informative."  See <u>Hoffmann-La Rouche Inc. v.</u>

28

Sperling, 493 U.S. 165, 172 (1989).  Likewise, claim

forms must be informative and accurate.  Id. at 172;

Churchill Village, L.L.C. v. Gen. Elec., 361 F.3d 566,

575 (9th Cir. 2004) (notice is satisfactory if it

"generally describes the terms of the settlement in

sufficient detail to alert those with adverse viewpoints

to investigate and to come forward and be heard").

     The Court previously accepted the proposed Notice and

Claim form, finding that "[t]he Notice explains in plain

language what the case is about, what the recipient is

entitled to, and what the Class Member must do next in

order to make a claim," and "the Claim Form is similarly

simple."  (Approval Order at 21.)  The Court now

evaluates whether the parties executed class notice in

accordance with the Court's Preliminary Approval Order.

     According to Caroline Lowman, an employee of the

Settlement Administrator, the Notice was disseminated in

conformity with the Court's Preliminary Approval Order.

(See Lowman Decl. ¶¶ 3-16.)

     Given the representations made by the Settlement

Administrator that the Notice was disseminated in

accordance with the Court's previous order and the number

of Class Members who have responded to the Notice, the

1  Court finds that the Notice was reasonable as to its
2  content and the method of communication.

3

4      As the terms of the Settlement Agreement were fair,
5  reasonable, and adequate, and because the procedures for
6  dissemination of the Class Notice were reasonable, the
7  Court finds that the Settlement Agreement should be
8  approved.

9

10 **B.   Attorneys' Fees, Costs, Settlement Administration**
11 **       Costs, and Incentive Payments**

12     The Preliminary Approval Order approved allocation of
13 settlement funds for attorneys' fees, costs, incentive
14 award payments, and settlement administrative expenses.
15 As noted above, Class Counsel filed a separate motion
16 (the Fee Mot.) requesting final approval of these
17 expenditures.  The Court addresses each in turn.  <u>Staton</u>
18 <u>v. Boeing Co.</u>, 327 F.3d 938, 963 (9th Cir. 2003) ("[T]o
19 avoid abdicating its responsibility to review the
20 agreement for the protection of the class, a district
21 court must carefully assess the reasonableness of a fee
22 amount spelled out in a class action settlement
23 agreement.").

24

25     **1.   Attorneys' Fees**

26     Notwithstanding an explicit agreement to shift
27 attorney's fees in a certified class action, "courts have
28

                                21

1  an independent obligation to ensure that the award, like
2  the settlement itself, is reasonable, even if the parties
3  have already agreed to an amount."  <u>In re Bluetooth</u>
4  <u>Headset Prods. Liab. Litig.</u>, 654 F.3d 935, 941 (9th Cir.
5  2011).

6

7      The Settlement Agreement sets aside 30% of the Gross
8  Settlement Amount ($60,000 of the $200,000 total fund);
9  the Court previously stated that "such an award is within
10  the range of the possible, but will require more
11  'justification' than is currently evident from the record
12  before final approval . . . ."  (Approval Order at 19.)
13  The Court also stated that Class Counsel should submit
14  "billing records in support of the proposed fee award, in
15  the event the Court assesses the fee award under the
16  lodestar method."  (<u>Id.</u> at 20 n.10.)

17

18      Where the Court exercises its diversity jurisdiction,
19  "state law governs both the right to recover attorney's
20  fees and the computation of their amount."  <u>Collado v.</u>
21  <u>Toyota Motor Sales, U.S.A., Inc.</u>, 550 F. App'x 368,
22  368 70 (9th Cir. 2013) (citing <u>Mangold v. California</u>
23  <u>Public Utilities Com'n</u>, 67 F.3d 1470, 1478 (9th Cir.
24  1995)).  Under California law, the lower courts have the
25  discretion to determine what constitutes reasonable
26  attorneys' fees.  <u>PLCM Grp. v. Drexler</u>, 22 Cal.4th 1084,
27  1096 (2000) (internal citation omitted).  "[T]he fee
28

setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." Ctr. For Biological Diversity v. Cnty. of San Bernardino, 188 Cal. App. 4th 603, 616 (2010).  "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." Id. (internal citation omitted).

Class Counsel has submitted detailed billing records along with the Fee Mot.  Two attorneys, Aarin A. Zeif and Michael A. Gould, have expended 216.2 hours and 37.3 hours, respectively, prosecuting this action, for a total of 253.5 hours.  (Gould Decl. ¶ 20; Declaration of Aarin A. Zeif ("Zeif Decl.") (Doc. No. 32-1) ¶ 8.)  Ms. Zeif seeks an hourly rate of $450.00 per hour; in two previous actions, she has been approved for billing at that rate. (Zeif Decl. ¶ 7; Gould Decl. ¶ 21.)  Mr. Gould seeks an hourly rate of $650.00 per hour; he has previously been approved for billing at $450.00 per hour along with Ms. Zeif, and has more than double Ms. Zeif's experience as an attorney.  (Gould Decl. ¶ 21.)

Assuming Ms. Zeif and Mr. Gould billed their time at their requested rates, the lodestar total for their fees would be $121,535.00, calculated as (216.2 x $450.00) +

(37.3 x $650.00).  This is more than double the requested attorneys' fee award in this case.

The Court has reviewed the billing records submitted by Ms. Zeif and Mr. Gould (see Zeif Decl. Ex. 1; Gould Decl. Ex. 1), and though the Court would not be inclined to approve the hourly rate that Ms. Zeif and Mr. Gould request, given the amount of time they have expended in prosecuting this action, the Court finds that the amount of attorneys' fees requested in this case is reasonable.

### 2.   Costs

The Court previously approved a reimbursement of up to $1,500.00 in litigation costs for Class Counsel. (Approval Order at 4; Fee Mot. at 4.)  Costs are provided under the California Labor Code for reasonable fees and costs.  (Fee Mot. at 7 (citing California Labor Code § 1194(a)).)  Class Counsel only request reimbursement of $750.47, for which they have submitted an accounting. (Fee Mot. at 1, 15; Gould Decl. Ex. 2.)  The Court finds these costs to be reasonable.

### 3.   Incentive Award

Class Counsel previously requested, and the Court preliminarily approved, an incentive award of $5,000 for Barbosa as a named Plaintiff.  (Approval Order at 20.) "[N]amed plaintiffs, as opposed to designated class

members who are not named plaintiffs, are eligible for
reasonable incentive payments." <u>Staton</u>, 327 F.3d at 977.
California courts also have noted that "[i]ncentive
*awards are fairly typical in class action cases*," and
"are discretionary . . . and are intended to compensate
class representatives for work done on behalf of the
class, to make up for financial or reputational risk
undertaken in bringing the action, and, sometimes, to
recognize their willingness to act as a private attorney
general." <u>In re Cellphone Fee Termination Cases</u>, 186
Cal. App. 4th 1380, 1393-94 (2010), <u>as modified</u> (July 27,
2010) (internal citations and citation omitted).  "An
incentive award is appropriate "if it is necessary to
induce an individual to participate in the suit."  <u>Id.</u> at
1394 (some quotation marks and citation omitted).

     In determining whether a proposed incentive award is
appropriate, courts may consider

     1) the risk to the class representative in
     commencing suit, both financial and otherwise;
     2) the notoriety and personal difficulties
     encountered by the class representative; 3) the
     amount of time and effort spent by the class
     representative; 4) the duration of the
     litigation and; 5) the personal benefit (or lack

1      thereof) enjoyed by the class representative as

2      a result of the litigation.

3  <u>Id.</u> (quoting <u>Van Vranken v. Atlantic Richfield Co.</u>, 901

4  F. Supp. 294, 299 (N.D. Cal. 1995) (internal citation

5  omitted)).  "Courts have generally found that $5,000

6  incentive payments are reasonable." <u>Alberto v. GMRI,</u>

7  <u>Inc.</u>, 252 F.R.D. 652, 669 (E.D. Cal. 2008); <u>see also</u>

8  <u>Munoz v. BCI Coca Cola Bottling Co. of Los Angeles</u>, 186

9  Cal. App. 4th 399, 412 (2010) (approving $5,000 incentive

10  payment); <u>Clark v. Am. Residential Servs. LLC</u>, 175 Cal.

11  App. 4th 785, 806 (2009) (citing with approval the

12  allocation of a $5,000 incentive award to the plaintiff

13  in <u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454 at

14  456-57)).

15

16     Along with the Approval Mot., Barbosa submitted a

17  declaration explaining the work she has done in this case

18  from its inception to the parties' assent to the

19  Settlement Agreement.  (<u>See</u> Declaration of Diana Barbosa

20  (Doc. No. 32-4).)  After reviewing this declaration, the

21  Court agrees that a $5,000 incentive payment payable to

22  Barbosa is reasonable.

23

24     **4.   Settlement Administration Costs**

25     The Court previously approved of the appointment of

26  Class Action Claims Administration, Inc., to serve as the

27  Settlement Administrator.  (Approval Order at 21.)  The

28

1  Court also approved of a settlement administration fee of
2  $5,500.  (Id. at 5.)  An employee for the Settlement
3  Administrator explained in her declaration exactly how
4  its costs were accrued, e.g., labor, printing, mailing
5  costs, and tax expertise.  (Lowman Decl. ¶ 8.)  As the
6  Court previously approved of $5,500 in administration
7  costs and those costs have not changed, the Court
8  approves of those costs as part of the final approval of
9  the Settlement Agreement.
10
11      As all the fees and costs as noted in the Approval
12  Mot. and the Fee Mot. are fair, reasonable, and supported
13  by the supplied evidence, the Court GRANTS the Fee Mot.
14
15                    **IV.  CONCLUSION**
16      For the reasons stated above, the COURT APPROVES the
17  settlement terms and GRANTS the Motion for Final Approval
18  of Class Action Settlement, with the change agreed to by
19  the parties that the Family-Sustaining Employment
20  Foundation of the United Way shall be entitled to any cy
21  pres award.  Moreover, the Court GRANTS the Motion for
22  Attorney Fees, Costs, Incentive Awards, and Settlement
23  Administration Costs.
24
25  Dated:   May 1, 2015
26                         VIRGINIA A. PHILLIPS
27                      United States District Judge
28

27